Michael Spector appearing for Appellant, Stephen Reynolds appearing for Appellee. Can I... Are you able to hear me? Yes, whoever you are. Mr. Spector, sorry. All right, sorry Mr. Spector. Mr. Spector, do you wish to reserve any time for rebuttal? Five minutes, Your Honor. Okay, thank you. Now I can see you, Mr. Spector. I can see you too. Yeah, I'm being blocked. I apologize. That's okay. You may commence. Thank you. Judges Taylor, Brain, Gabb, Michael Spector. I have with me Tom Norman and Ken Opperseen, who are the attorneys for Mechanics Bank, who are the successor, by merger, to Aramo Bank. May I please report? In this case, it is undisputed that my client's loan, secured solely by the debtor's residence in Loomis, California, the loan amount was exceeding a million dollars, and the promissory note required monthly payments was made in 2008. The loan, in default, the debtor filed many times. The debtor most recently filed this Chapter 11 proceeding, presented a plan of reorganization, and treated my client in a manner that we do not believe is appropriate under Section 1123B5. Specifically, the debtor's plan removed the requirement to make monthly mortgage payments and instead said that my client would be paid within two years from the sale or refinance of other properties. 1123B5 precludes modifications of debts secured solely by the debtor's residence, and the court's confirmation of the plan over our objection, allowing that to happen, is inappropriate, and that's why we're here. Did the judge make any findings regarding 1123B5? I could not find anything on the record. What I saw was the debtor's counsel argued that 1123B5, the purpose of that was to prevent lien stripping of mortgages secured by the debtor's residence, or valuing the lien. That's what the debtor's argument was. There was no legal authority for that position. There is no legal authority for that position, but the court adopted that position. The court expressed that that was the purpose of 1123B5, but that's not the purpose. 1123B5 was implemented for the purpose of causing stability in the home mortgage market and preventing mortgages from being modified in any manner. And by putting a plan in there that says, we're not entitled to get mortgage payments, but we have to wait two years, and some day down the road we're going to get paid in full, that doesn't comply with 1123B5. Have you received any payments pursuant to the confirmed plan? I know there was a sale approved before confirmation, but have you received any proceeds at all in the interim? No. The only thing we received were some proceeds from that sale order. Alright, please continue. So, in short, this court in the wages versus U.S. case bank case said, in that case, that the debtor could not change the interest rate and extend the term of a loan. So that case had even more available facts than this case, and yet this court properly upheld that 1123B5 prevents any such modification, and that should have been the result in this case as well. I would also note that we argued before the court that the absolute priority rule, 1123B2A, is not complied with, because that would require a stream of payments being paid to my client, and that didn't happen either. Before the bankruptcy court, we argued those principal points. Unfortunately, we lost, and that's why we're here. We did file a motion to stay the confirmation order. The motion was denied. I believe it was denied because the judge didn't believe we had sufficient irreparable harm. But I will advise the court that in my view, there's nothing moot about this appeal. Nothing that has to be unwound. If the court reverses, there's no harm to anybody. All that would need to happen would be to reinstate or effectuate a plan that requires monthly mortgage payments being paid to my client. So there's no inherent mootness, no prejudice to anyone, and the plan has not been substantially consummated because one of the requirements for substantial consummation, the first requirement, which requires that all property that's to be transferred has to have in fact been transferred. That has not been the case because this plan, at its root, requires certain properties to be sold so that creditors can be paid. And this is a plan solely based on selling some properties I would refer to. The plan itself, it's an exit record 0-0-2, and the plan states as follows, the proposed plan calls for the prompt liquidation of debtors' rental properties in California and Texas, the payment of all secured and unsecured claims. So the plan contemplates, that's how the debtor was to perform, was to transfer certain properties. The properties have not been transferred, so there has been no substantial consummation. If there had been substantial consummation and my client had been paid, we wouldn't be sitting here today. Counsel, my question is with regard to the requirements under 1191, that the plan be fair and equitable, the court made that determination, but I wasn't aware of what facts or what rationale the court gave for that determination. Are you? I am not. Do you believe our review of that determination is a factual question, or is it reviewed as de novo? I think it's a mixed question of law and fact. So I think, which requires my recollection, that that requires a de novo review if it's a mixed question. Do you believe that we could evaluate the plan and the fair and equitable requirements, 1191 and 1129B2A, to just determine are there going to be regular payments made, or is the property going to be sold and you'll have the right to credit bid, or there's an indubitable equivalent provision within the plan that would provide the rationale for meeting that requirement? Can we do that simply to determine that there is or is not compliance in this instance? I think to be fair and equitable, there has to be monthly mortgage payments with an appropriate rate of interest, and since it's the home secured solely by the debtor's residence, that interest rate has to be as called for in the contract. The debtor cannot change the interest rate like they can in a commercial context. So what about the arrears, which are significant? Can those be paid? We have a plan that says I'm going to pay regular payments. I'm going to pay them at the appropriate rate of interest. Whatever it is, I'm not going to say it's a default rate because I'm not going to drill down on the contract to that extent, but we have, what, a quarter of a million dollars in arrears now? Yeah, that's correct. We have both pre-petition and post-petition arrears. The plan, I believe, says they're going to cure the arrears, but I assume the methodology for curing the arrears is by the sale or refinance of the properties. What we're really here about is the monthly mortgage payments because generally plans can provide all sorts of methodologies for curing arrearages, and we're not objecting to the arrearages being cured in that manner. What we're objecting to is the lack of monthly mortgage payments, which may not be a big deal, but there's a reason for this provision. My client would like the certainty to conduct business in the future, and I think that we need to uphold the law on this issue. In terms of a plan that, for example, said property will be sold and that gives your client the election of either taking all proceeds in a lump sum and pre-paying monthly or letting them sequester it and pay you monthly for this proceed, that would pass muster, wouldn't it? Because it would be an election by your client, not a compelled treatment. I wouldn't have any objection to that. The problem is with this plan is there's no specific payment of anything provided for my client. The problem is that within two years, they'll get paid something. And the reason that's a problem, counsel, is because there's no income in this instance. The debtor doesn't produce regular income that could be used to fund the plan. That's my understanding. That's how they got around that issue. If the properties were sold, which I believe that there was one property sold, and they banked the money and made monthly payments, then, you know, or if they refinanced, or if they had contributions from third parties, which often happens, there are numerous ways around the lack of income problem. But in this case, that's how the court, in my view, got around that issue. All right. We have an extra five minutes. Do you want to reserve at this point? Yes, I'd like to reserve. Thank you. All right. Thank you. All right. Mr. Reynolds, you may commence. Good morning. Stephen Reynolds on behalf of the debtor, Gowalt. May it please the court, Judge Klein correctly confirmed the Widow Gowalt's Chapter 11 plan. 1129B2AI guarantees a non-consenting secured creditor stream of payments equal to its total plan. The confirmed plan does just that. While monthly payments are common practice, monthly payments are not the exclusive definition of stream of payments. Isn't that the wrong section? I mean, isn't this an 1123B5 case? Well, it's a B5 case as well as 1129B2. They have to work together. Well, it could meet one and not meet the other, couldn't it? I mean, the argument you're making, if we weren't talking about her home, she wouldn't be here, correct? Correct. And we are paying their claim in full. We're not modifying the principal amount, and we're paying all of the interest. So they're receiving their claim in full. They're just being delayed while the liquidating plan is effectuate. Isn't that a modification of their contract? Well, if monthly payments were required, I think Congress could have said so. We have flexibility in Chapter 11. I mean, we have Chapter 13 plans that call for sale of assets in order to cure an errage and pay a claim. But you have the same anti-modification provision in Chapter 13, right? Exactly. Exactly. It's relatively common practice to propose a sale of real property through a reorganization plan, whether it's 1213 or 11. So that's what we're proposing here. And I don't think 1123 precludes that option. What we're doing here is liquidating assets. And in fact, ironically, I looked at the settlement statement on the $20,000 paid to Mechanics Bank. That was entered on July 22nd, which was the same day the order confirming plan was entered. I'm sorry. No, I was going to say, so Council, when is the payment due? The payment is due two ways. One is the rental properties are sold in Texas. When is that going to happen? Where our marketing efforts are ongoing, it has to happen within two years of plan confirmation. So does the note provide that it's all due and payable within two years? The plan does, yes. No, does the note provide that it's all due and payable within two years? No, the note is, as I recall, a 30-year note. And the maturity of that note is somewhere off in the future. I don't recall how far off at this point. So hasn't the plan modified the terms of the obligation by virtue of what you've just suggested you're going to do? By promising to cure the arrearage, I mean, the note, what we're doing is we're paying the claim in full. But you've modified the terms of the obligation, haven't you, by virtue of the plan? Yes, just as we've modified the terms of the note by stopping their foreclosure sale. They have contractual rights. And the plan injunction. I mean, that's a difference. There are many things that bankruptcy filing does to a creditor. We're focused, though, on what the plan does. And the plan, the problem here is the plan changes the method of payment. That's correct. The plan calls for a cure of the arrearage and, in fact, the payment of the claim in full. But it's not just the cure of the arrearage. It's also the future payments that are due under the note are not being made. They're all being modified by the terms of your plan. The arrearage cure isn't the big issue for me. The problem for me is you have regular payments that are due monthly that you are no longer going to make. And you've decided that that's not a modification of their rights. Not as contemplated by 1123B. Well, according to you, not according to any case law that you've cited to us. That's true, Your Honor. But when we look at the cases, I didn't find any cases that say there has to be a monthly payment. Maybe because it's an obvious modification of the note which would never get reported by any court because it would never be accepted. But, you know, thinking of that theme, your adversary here today said that Judge Klein adopted a position. But as I read his oral ruling, I don't even need to talk about it. Is there any place in the record where Judge Klein discussed 1123B-5 in the ruling and said this is why I'm doing this? All he said was he thought you could protect or the bank could protect themselves through the appellate process, which is what's happening now. No, I can't cite anywhere in the specific record where Judge Klein addressed that head on. I think we can all agree we have a brilliant judge here. So when he doesn't say something, he says something. My position on Judge Klein is he's usually right. And he has a reason for doing things. When we're looking at B-5, we should also look at 1123B-6. It states the plan may include any other provision not inconsistent with applicable provisions of this title. So what we have is a plan that meets 1129, was proposed in good faith, and is feasible. And, in fact, pays the claim secured by debtor's residence in full, including, cures the arrearage, and pays it in full including all interest. There's no modification. Alright, putting that aside, I've got a question about your plan. Typically, time goes on. Is there any possibility of this bank ever declaring a default under the plan before we get to two years out? No. So at two years, if she hasn't paid anything... Then the bank can exercise its remedy. And how much... Go ahead. No, go ahead, Judge. What are the amounts of payments on this thing? It's a big number, as I recall. It's a big number. Five or six thousand dollars. I'm sure that Mr. Spector can correct me, but it's a large number. So how much in a few years will they be? It's going to be six figures plus at the end of two years, correct? Depending on whether any other properties are sold. Yes, it could be a big number. So you raised a second question. Are there any pending sales that have been approved by the court, or has there been any pending sales that have closed since confirmation? There was the one that closed at confirmation, and the two largest properties have continued to be marketed. So nothing has happened since confirmation that would change the bank's position to date? They haven't received any money other than the twenty-odd thousand dollars in July. The debtor is concentrated on maximizing the value received on those properties, which are in the benefit of not only this creditor, but all creditors. The more she's able to pay, the more she's able to realize on the sale of the two larger rental properties in Texas will increase the thirty-five percent of those net proceeds paid to Mechanics Bank and make payments possible to all of the creditors. Anything further? I think that's it. My position is that 1123B5 is satisfied because we're paying that claim in full, including all interest. We're not reducing principal. We're not reducing interest. The case is cited by Mechanics Bank. There are cases where they're either reducing principal or reducing interest. We're not doing either. We're paying the claim in a reasonable amount of time given the particulars of this case. Congress wanted Chapter 11 to be a flexible tool. They wanted residential home lenders to be paid in full. They didn't want the problems that existed before the modifications to 1123B5 and its analog in Chapter 13. Thank you. I thank the court for their questions and for listening to me. Thank you for your argument. All right. Mr. Spector, you have a little less than five minutes for rebuttal. I don't have anything other than to confirm that the payments are approximately $6,000 per month. All right. Thank you very much for your good argument, Ben. This will be under submission and we'll call the next one. Thank you.
judges: TAYLOR, BRAND, GAN